T.C. Summary Opinion 2018-30

UNITED STATES TAX COURT

ROGER G. MAKI AND LILANE J. GERVAIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8430-17S.                        Filed June 6, 2018.

Roger G. Maki and Lilane J. Gervais, pro sese.

Connor J. Moran, for respondent.

SUMMARY OPINION

GERBER, Judge: This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $16,622 income tax deficiency and a $3,324.40 accuracy-related penalty[2] with respect to petitioners' 2014 tax year. The issue remaining for our consideration is whether petitioners are entitled to deduct away from home expenses in connection with their timberland activity and, if they are, the amount they are entitled to deduct.

## Background

Petitioners resided in Washington State at the time their petition was filed. During 2014 petitioners resided in Des Moines, King County, Washington. Roger Maki (petitioner) inherited approximately 110 acres of Washington State land from his mother. Some of the land was in Thurston County and some in Lewis County. The land, which was remote from petitioners' home, was divided into

---

[1](...continued)
Court Rules of Practice and Procedure.

[2]At trial, respondent offered into evidence some type of computer transcript to show that a supervisor was involved in the examination process. Petitioners objected and the document was not admitted, resulting in our ultimate finding that respondent did not meet his burden of production to show that the sec. 6662 penalty was supervisor approved as required by our holding in Graev v. Commissioner, 149 T.C. __ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Accordingly, the determination of a penalty will not be sustained in this case.

four separate parcels, all within a 35-mile radius.  On one parcel was a residence, and all the parcels were valuable because of timber situated on them.

Petitioners' sources of income during 2014 were Social Security, interest, dividends, capital gains, and pensions, all of which were received at their home in Des Moines.  Although otherwise retired, petitioner was maintaining and developing the 110 acres of timberland to sell timber in order to maintain and improve his standard of living.  In that pursuit he periodically spent approximately three days at a time planting, protecting, and maintaining trees on the timberland. He occupied the residence on the timberland while he pursued the care and maintenance of the trees.

During 2014 petitioner spent 167 days and nights at the timberland and slept in the residence situated thereon.  The only public utility available there was electricity.  Petitioners did not want petitioner to be away from his home as often as he was but found it necessary because:  (1) when the property was not occupied, timber was illegally harvested, presenting a loss of the most valuable assets on the property and (2) petitioner's timber activity was a relatively small operation and did not warrant hiring others to plant, protect, and maintain the trees.

When it came time to prepare and file their 2014 Federal income tax return, petitioners sought the assistance of the Internal Revenue Service (IRS), and they

were sent the 2014 version of IRS Publication 463, Travel, Entertainment, Gift and Car Expenses. That publication, in part, covers travel expenses incurred while temporarily traveling away from home. In attempting to follow the guidance, petitioner used per diem amounts allowed for travel on page 9 of the publication. Basing his computations on 167 days away from his home in the Seattle area and using the highest per diem rate on page 9 of the publication, petitioner arrived at away from home expenses totaling $56,960 for the 2014 tax year. Respondent disallowed the total amount claimed, and petitioners contend that respondent is in error.

Petitioner reported his timber raising activity as a business on a Schedule C, Profit or Loss From Business, included with the 2014 income tax return. No income was reported and total expenses of $70,157 were deducted, of which respondent disallowed $56,960. The remaining expenses of $13,197 for travel, insurance, taxes, licenses, and related expenses were not disallowed. In other words, respondent did not question whether petitioners were engaged in the business of growing and caring for timber.

## Discussion

Respondent's position with respect to the disallowed deductions is that petitioner was not "away from home" when he worked and stayed at the

timberland because the timberland residence was his "tax home" or that petitioner is considered an "itinerant" because he did not have a "tax home". Petitioners counter that their tax home is Des Moines and that petitioner was away from home for 167 days and entitled to deduct the per diem allowance for those days.

Section 162(a)(2) provides for the deduction of ordinary and necessary business expenses, including travel expenses while away from home in the pursuit of a trade or business. Those expenses must be incurred while "away from home" overnight. Commissioner v. Flowers, 326 U.S. 465, 470-472 (1946). Rev. Rul. 93-86, 1993-2 C.B. 71, sets forth the Commissioner's guidance with respect to this aspect of section 162(a)(2). In particular, the revenue ruling states that a taxpayer's "home" is generally considered to be his or her regular or principal place of business. If a taxpayer has no regular or principal place of business, then his or her abode, in a real and substantial sense, is where personal and business connections are maintained. According to the revenue ruling, if a taxpayer meets neither of the above categories, then he or she is considered to be an itinerant with a "tax home" wherever he or she happens to work.

Petitioners contend that petitioner's home in Des Moines is his "tax home". Evidence in the record supports petitioners' contention including the fact that petitioner spent more than half of the 2014 tax year at the Des Moines home.

More importantly, all of the 2014 taxable income petitioner earned was received at the Des Moines home. Petitioner's timber is being cultivated for harvest and at some point will provide a source of relatively significant revenue. Other than the argument that petitioner spent a lot of time at the timberland properties, respondent has not provided a persuasive argument in support of a holding that the Des Moines home was not petitioner's "tax home" during 2014. We accordingly hold that Des Moines was petitioners' tax home during 2014.

As respondent has not questioned whether petitioner was in the timber business during 2014, we proceed to decide the amount, if any, of per diem allowance that petitioners are entitled to deduct for 2014. A self-employed individual can deduct meal and incidental expenses computed at the Federal rate established for the locality in which meal expenses were incurred while away from home. See Rev. Proc. 2011-47, sec. 1, 2011-43 I.R.B. 520. The Federal published rate is deemed substantiated for purposes of section 1.274-5T(b)(2)(i) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985). Self-employed individuals may not use this method to substantiate lodging expenses. See Rev. Proc. 2011-47, sec. 1.

Petitioners used the per diem rates shown on page 9 of Publication 463. We find it peculiar that petitioners used rates designated for "Luxury Water Travel",

such as a cruise. Those rates are based on the highest Federal per diem rates, which include lodging, meals, and incidentals. In particular, the rates petitioners used ranged from $262 to $374 per day, resulting in the $56,960 or an average of approximately $341 per day ($56,960 divided by 167 days). We note that petitioners did not provide any evidence of the lodging expenses actually incurred in the timber activity during 2014.

Although petitioners used the rates from page 9, page 6 of Publication 463 explains that $46 per day is the Federal per diem rate (for meals) that applies to many smaller localities in the United States. Specifically for 2014, Thurston County had a $61 per diem rate and Lewis County was without a specified rate and therefore had a $46 per diem rate. Although the record supports our finding of 167 days away from home in 2014, the exact number of days in each of the counties in which the four parcels are located is not available. On the basis of petitioner's testimony, however, it is reasonable to reach the conclusion that his time was split equally among the four parcels and hence in the two above-named counties. Accordingly, we find that petitioner spent 83.5 days in each county. The per diem would thus total $5,093.50 for time spent in Thurston County and

$3,841 for time spent in Lewis County.  We hold that petitioners are entitled to deduct $8,934.50 as away from home expenses on their Schedule C for 2014.[3]

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[3]All other adjustments on petitioners' notice of deficiency for 2014 were computational and would follow the allowance decided herein.